IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 20, 2010 Session

**KIMBERLY BYARS**
**v.**
**EARL YOUNG**

**Appeal from the Juvenile Court for Shelby County**
**No. M2203      Cary Woods, Referee**

_____

**No. W2008-02721-COA-R3-CV - Filed May 20, 2010**

_____

This is an appeal from a juvenile court custody proceeding. The mother filed a petition for legitimation in the Juvenile Court. The Juvenile Court entered an order finding that the defendant father is the child's natural father, designating the mother as the child's primary residential parent and granting weekend parenting time to the father. After a protracted dispute over parenting time, the Juvenile Court entered an order designating the father to be the child's primary residential parent, with no provision for parenting time for the mother. The mother then appealed to the Circuit Court. After several years of Circuit Court proceedings, the case was transferred to another Circuit Court judge who ultimately entered an order dismissing the appeal. The mother appealed the Circuit Court's order. After remand, the Circuit Court transferred the appeal to the Court of Appeals. We affirm the designation of the father as the primary residential parent but find that the Juvenile Court erred in not providing for parenting time for the mother, and remand the case to the Juvenile Court for entry of an order providing for parenting time for the petitioner mother.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part, Reversed in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Plaintiff/Appellant Kimberly Byars, Lansing, Michigan, pro se

Defendant/Appellee Earl Young, Memphis, Tennessee, pro se

# OPINION

## FACTS AND PROCEEDINGS BELOW

The child at issue in this appeal, a daughter, was born to Plaintiff/Appellant Kimberly Byars ("Mother") in November 1999.[1]  In February 2001, Mother filed a petition in the Shelby County Juvenile Court to establish the parentage of Defendant/Appellee Earl Young ("Father") as to the daughter.

After a hearing on the petition, the Juvenile Court Referee entered an order finding that Father is the daughter's natural father and legitimating the child.  Mother was designated as the child's primary residential parent, Father was awarded unsupervised weekend parenting time, and Father was ordered to pay monthly child support.

Almost immediately after that, disputes arose between the parties.  At some point, Mother witnessed conduct by Father that she believed to be sexual abuse of her infant son.[2]  Mother refused to comply with the Juvenile Court order providing for unsupervised residential parenting time for Father with the parties' daughter.  After she refused to produce the child, temporary custody was awarded to Father, and Mother was found in contempt of court.  After some time, temporary custody was returned to Mother, family counseling was ordered, and a guardian ad litem for the child was appointed.  Mother alleged that, in December 2002, the parties' daughter returned from spending residential parenting time with Father and told Mother that Father had fondled her.  At some point, the Tennessee Department of Children's Services investigated the allegations of sexual misconduct against Father and determined that they were unfounded.[3]  Despite this, Mother persisted in labeling Father as a sexual perpetrator and refused to allow Father parenting time with the child unless it was supervised.

Juvenile Court Referee Cary Woods held a hearing on the parties' disputes.  Both parties appeared at the hearing.  On June 4, 2003, Referee Woods made the following factual findings:

---

[1]Mother has custody of her three older children, all sons.

[2]Mother's appellate brief indicates that this occurred in December 2000, but the appellate record does not state when this incident allegedly occurred.

[3]The record does not indicate when the investigation by the Department of Children's Services took place, but it apparently occurred after Mother's allegation regarding the parties' daughter.

1. That the mother refuses to comply with the previous visitation orders and under sworn testimony and in open Court, refuses to allow visitation unless supervised.

2. That the mother refused to cooperate with the Guardian Ad Litem for home visits and to meet with the children outside of the mother's presence.

3. That the mother has filed two separate complaints with the Tennessee Department of Children's Services, alleging sexual misconduct and after investigation, both charges were unfounded.

4. That the mother's conduct of persistent refusal to comply with the Court's orders evidences an aggressively defiant attitude toward the father and that the father should be awarded permanent and exclusive custody.

5. That the mother continually labeling the father as a sexual perpetrator is a material change of circumstances and creates a substantial harm to the minor child, and that a change of custody is in the best interest of the child.

Based on these findings, Referee Woods made the following recommendations to the Juvenile Court Judge:

1. That the Petition for Contempt filed in this Court on July 24, 2001 be dismissed.

2. That the Petition to Modify Order filed in this Court on January 2, 2002 be dismissed.

3. That the Counter-Petition to Modify Order filed in this Court on June 3, 2003 should be dismissed.

4. That said child be removed from the custody of the mother, Kimberly Robinson Byars.

5. That custody of said child be awarded to the father, Earl Albert Young.

Referee Woods' findings and recommendations did not provide for parenting time for Mother with the parties' child. The same day, the Juvenile Court Judge adopted the findings and recommendations of Referee Woods and issued an order to that effect. On August 7, 2003, the Juvenile Court Judge dismissed Mother's petition to rehear the matter.

Immediately after that, Mother, acting *pro se*, filled out a form "Notice of Appeal" from the Juvenile Court. The form listed that the appeal could be to the Shelby County Circuit Court, the Shelby County Criminal Court, the Court of Appeals, or the Court of Criminal Appeals, with a box next to each option. The box was checked on the form indicating that Mother's appeal was to the Circuit Court.

Substantial proceedings in the Circuit Court ensued. At some point, the Circuit Court granted supervised visitation to Mother and ordered that both parties undergo psychological

examinations. Mother sought to be designated as the child's primary residential parent. For a short period of time, Mother was represented by counsel, who later withdrew. Mother later sought a court-appointed attorney; this request was apparently denied. The record does not indicate that, in the course of these Circuit Court proceedings, any question was raised by the Court or any attorney as to the subject matter jurisdiction of the Circuit Court over an appeal from a custody determination by the Juvenile Court.

On April 30, 2004, Mother filed with the Circuit Court a *pro se* request for findings of fact and conclusions of law, pursuant to Rule 52.01 of the Tennessee Rules of Civil Procedure. On May 13, 2004, the Circuit Court Judge recused herself and the case was assigned to another Division of the Circuit Court.[4] Mother immediately filed a *pro se* motion in the Circuit Court, objecting to Father's refusal to permit the child to have residential parenting time with Mother and with Mother's sons (the daughter's half-siblings), and seeking to have custody changed to designate her as the child's primary residential parent.

No action was taken on Mother's motion. Indeed, the record reflects no activity in the case whatsoever, for a period of over four years. The record has no explanation for this.

Finally, on November 6, 2008, the Circuit Court entered an order. The order recognized that, because the matter was an appeal from Juvenile Court related only to the custody of a child, the Circuit Court was without jurisdiction and "appellate jurisdiction more appropriately rests with the Court of Appeals." On this basis, the Circuit Court order dismissed the appeal and remanded the case to Juvenile Court.

Mother then filed a notice of appeal, appealing the order of the Circuit Court to the Court of Appeals. The Court of Appeals later determined that the Circuit Court, instead of dismissing Mother's appeal for lack of jurisdiction, should have transferred Mother's appeal directly to the Court of Appeals. *See* T.C.A. § 16-4-108(a)(2) (2009) ("Any case removed by mistake to the wrong court shall by that court be transferred to the court having jurisdiction of the case, direct."); *see also In re E.J.M.*, No. W2005-02520-COA-R3-CV, 2006 WL 2052713 (Tenn. Ct. App. July 25, 2006); *In re Estate of White*, 77 S.W.3d 765 (Tenn. Ct. App. 2001). The cause was remanded to the Circuit Court for entry of an order transferring Mother's appeal to the Court of Appeals. After the Circuit Court's transfer of the appeal to this Court, we now consider Mother's appeal.

---

[4]The Order of Transfer by Judge Kay Robilio, Division 5, states that Judge James Russell in Division 2 had agreed to accept the case.

-4-

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Mother raises the following issues:

> 1) Whether the juvenile court lacked jurisdiction for a custody hearing of the subject child, when the circuit court implied custody in previous divorce proceedings;
>
> 2) Whether the juvenile court erred when changing custody based upon a material change when one had not occurred;
>
> 3) Whether the evidence presented at trial was sufficient to warrant a finding that removing custody from Mother was in the best interests of the child;
>
> 4) Whether the evidence met the burden of proof at the clear and convincing standard, which must be supported by a preponderance of the evidence;
>
> 5) Whether the juvenile court's decision to grant no visitation to Mother was in the best interests of the then three-year-old child;
>
> 6) Whether the juvenile court ignored the Department of Children's Services and the reports of abuse, rendering the custody proceedings unconstitutional;
>
> 7) Whether the juvenile court used proper procedure by sending the case to the circuit court after the parent asked for an appeal from juvenile court;
>
> 8) Whether the denial of a speedy trial was unconstitutional;
>
> 9) Whether the state has the authority to file for child support for the custodial parent when there were no monies owed to the state;
>
> 10) Whether the trial court's order to undergo a mental health evaluation or have her children removed to foster care was constitutional.

We review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates to the contrary. TENN. R. APP. P. 13(d). We review the trial court's conclusions of law *de novo* without a presumption of correctness.[5] ***Campbell v. Fla. Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996).

## ANALYSIS

Among the issues raised on appeal, Mother argues that the Circuit Court did not have subject matter jurisdiction to hear her appeal from the custody determination by the Juvenile Court, and that the orders by the Circuit Court are null and void. In support, she cites ***Anthony v. Rodgers***, No. W2002-01240-COA-R3-CV, 2003 WL 22213208 (Tenn. Ct. App. Sept. 23, 2003). Having reviewed the record and pertinent authorities, we agree with Mother.

---

[5]Mother also filed a motion in this Court for extraordinary appeal, pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. This motion is denied.

We discussed the subject matter jurisdiction of appeals from child custody determinations by the Juvenile Court in *In re E.J.M.*, No. W2005-02520-COA-R3-CV, 2006 WL 2052713 (Tenn. Ct. App. July 25, 2006). In *E.J.M.*, the Shelby County Juvenile Court had designated the mother of the child at issue as the primary residential parent. Pursuant to a Local Rule of the Juvenile Court, the father in *E.J.M.* appealed the Juvenile Court's decision to the Shelby County Circuit Court. The Circuit Court dismissed the appeal for lack of subject matter jurisdiction. *Id.* at *2. The father then appealed to the Court of Appeals. *Id.*

On appeal, the *E.J.M.* Court discussed the application of Tennessee Code Annotated §§ 37-1-159(a) and (g), as well as *Anthony*. Because the father's appeal concerned primary residential parent designation and the provision of parenting time to the alternative residential parent, the appellate court agreed with the Circuit Court's holding that it did not have subject matter jurisdiction over the appeal from Juvenile Court.[6] "Because a court cannot exercise jurisdiction that has not been expressly, or by necessary implication, conferred upon it, it follows that" the proceedings in the Circuit Court are "void and of no effect." *S.W. Williamson County Cmty. Ass'n v. Saltsman*, 66 S.W.3d 872, 882 (Tenn. Ct. App. 2001) (citing *Dishmon v. Shelby State Cmty. College*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999)). Thus, on appeal, we will not consider the issues Mother raises with respect to the substance of the Circuit Court proceedings. We will, however, consider the issues raised by Mother with respect to the Juvenile Court proceedings.

On appeal, Mother questions whether the Juvenile Court had jurisdiction over the parties' daughter, apparently based on statements purportedly made by an unnamed Circuit Court Judge in the course of Mother's divorce from the father of her sons. Those proceedings did not involve Father and did not adjudicate the custody of the parties' daughter, and our appellate record in this case does not include anything from Mother's divorce proceedings. At any rate, jurisdiction of the Shelby County Juvenile Court arose from the filing of Mother's petition to establish parentage as to the parties' daughter. T.C.A. § 37-1-104(f) (2005). Having acquired jurisdiction over the child by virtue of the parentage petition, the Juvenile Court properly retained jurisdiction to adjudicate the parenting issues between Mother and Father, such as the designation of the primary residential parent and setting residential parenting time for both parties. *See id.*; *In re C.M.C.*, No. M2008-00329-COA-R3-JV, 2008 WL 4426885, at *2 (Tenn. Ct. App. Sept. 30, 2008). Therefore, the Juvenile Court below had jurisdiction in this case.

---

[6]In *E.J.M.*, the appellate court went on to hold that the Circuit Court should have transferred the appeal to the Court of Appeals. *In re E.J.M.*, 2006 WL 2052713, at *2. In the case at bar, the Circuit Court has transferred Mother's appeal to this Court.

On appeal, Mother asserts that she was denied her constitutional right to a speedy trial. We presume this issue refers to the proceedings in Circuit Court, in which the case inexplicably languished for several years. While the unexplained delay is disturbing indeed, the constitutional right to a speedy trial applies to criminal proceedings, and is not applicable here. *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, . . .."); TENN. CONST. art. I, § 9 ("That in all criminal prosecutions, the accused hath the right to . . . a speedy public trial . . .."); T.C.A. § 40-14-101 (2006) ("In all criminal prosecutions, the accused is entitled to a speedy trial and to be heard in person and by counsel.").

Mother also argues that the "trial court's" order requiring her to undergo a mental health evaluation was unconstitutional. The appellate record indicates that the Circuit Court required such an evaluation, but there is no indication that the Juvenile Court required a mental health evaluation. Because we have already held that the Circuit Court proceedings are deemed void and of no effect, we will not address this issue on appeal.

Mother also questions whether the State had authority to file for child support "when there were no monies owed to the State." Our record does not include the information necessary to consider this issue, so we are unable to address it on appeal.

The remainder of the issues raised by Mother on appeal stem from the Juvenile Court's decision to designate Father as the child's primary residential parent, despite Mother's allegations of at least two episodes of sexual abuse. She argues that the Juvenile Court's decision was not in the best interest of the child, and that it erred in "granting no visitation to . . . [M]other."

The appellate record in this case consists only of the technical record, *i.e.*, the pleadings and orders. There is no transcript[7] or statement of the evidence.[8] "In the absence of a transcript

---

[7]The record includes a single transcript of one short hearing before Circuit Judge Robilio, at which no evidence was heard.

[8]Rule 24 of the Tennessee Rules of Appellate Procedure provides in pertinent part:

> **(c) Statement of the Evidence When No Report, Recital, or Transcript Is Available.** If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellants recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant or the appellant's counsel as an accurate account of the proceedings, shall be filed with the
>
> (continued...)

or statement of the evidence, a presumption arises that the parties presented sufficient evidence to support the trial court's judgment." ***Mfrs. Consolation Serv., Inc. v. Rodell***, 42 S.W.3d 846, 865 (Tenn. Ct. App. 2000); (citing ***Coakley v. Daniels***, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992); ***Irvin v. City of Clarksville***, 767 S.W.2d 649, 653 (Tenn. Ct. App. 1988)); ***accord Scarborough v. Scarborough***, 752 S.W.2d 94, 97 (Tenn. Ct. App. 1988) ("When the trial court hears the evidence, but the evidence is not included in the record on appeal, it is presumed that the evidence supports the ruling of the trial court." (citing ***Turner v. Turner***, 739 S.W.2d 779 (Tenn. Ct. App. 1986))). The presumption that the evidence supports the trial court's findings has been termed "conclusive." ***See Coakley v. Daniels***, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992).

Mother asserts first that the Juvenile Court did not consider her allegations that Father had engaged in sexual abuse of her son and also of the parties' daughter. To the contrary, the Juvenile Court's order indicates that Mother's allegations were investigated and, after investigation, were deemed "unfounded." In the absence of a transcript or a statement of the evidence, we must presume that the evidence before the trial court showed that Mother's allegations had been appropriately investigated and were found to be erroneous. Therefore, we must affirm the Juvenile Court's finding that Mother's charges of sexual abuse were unfounded.

Mother argues that the Juvenile Court erred in changing the designation of the primary residential parent from Mother to Father. The Juvenile Court's order makes it clear that its decision stemmed from Mother's refusal to accept the Court's finding that her charges of sexual abuse by Father were not well-founded. The order states that Mother refused to permit Father his court-ordered visitation unless it was supervised, had an "aggressively defiant attitude" toward Father, and persisted in "labeling the father as a sexual perpetrator." In the absence of a transcript or a statement of the evidence, we must presume that the

---

[8](...continued)
> clerk of the trial court within 60 days after filing the notice of appeal. Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. Proof of service shall be filed with the clerk of the trial court with the filing of the statement. If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement. Any differences regarding the statement shall be settled as set forth in subdivision (e) of this rule.

TENN. R. APP. P. 24.

evidence presented to the trial court supported its factual findings. Therefore, we presume that the evidence presented to the Juvenile Court, including the investigation by the Department of Children's Services, supported the Juvenile Court's findings that Father did not fondle or otherwise sexually abuse the parties' daughter or Mother's son. We also presume that the evidence supports the Juvenile Court's finding that Mother, in essence, refused to accept the Court's holding that the sexual abuse charges were unfounded, and continued to label Father as a sexual perpetrator and refuse visitation unless it was supervised.

This Court has seen prior cases in which one parent remains convinced that the other parent has sexually abused their child, despite thorough investigations that concluded otherwise, with disastrous results. *See Keisling v. Keisling*, 196 S.W.3d 703, 722 (Tenn. Ct. App. 2005); *see also B.M.M. v. P.R.M.*, No. M2002-02242-COA-R3-CV, 2004 WL 1853418 (Tenn. Ct. App. Aug. 18, 2004). In *Keisling*, the mother and the children's maternal grandmother feared that the children's father had sexually molested their daughters. The mother asked for repeated investigations by DCS, and when the daughters would return from visits with their father, they would be questioned at length about whether they had been subjected to sexual abuse and physically examined for signs of abuse, even to the point of examining the children's genitals with a magnifying glass. *Keisling*, 196 S.W.3d at 707. Investigations by DCS found no abuse, so the father was permitted unsupervised visits. *Id.* The mother refused to accept the results of the investigations and took extraordinary measures to prevent the father from having unsupervised visits, including appealing the matter to the Tennessee Supreme Court. On remand from the Tennessee Supreme Court, the case was transferred to a different trial judge. *Id.* at 708-10. The consistent conclusion by both trial judges was that the mother's accusations of sexual abuse were unfounded. Moreover, a psychologist working with the daughters became concerned about the hypervigilance by both the mother and grandmother; the psychologist advised them that their repeated questioning of the children about possible sexual abuse was counter-productive, and that "repeatedly performing genital examinations could itself constitute abuse." *Id.* at 713. The mother's behavior persisted, fueled by her sincere but misguided belief that abuse had occurred. The trial judge found that "the repeated accusations were destructive of Father's relationship with the children, and that the relentless questioning and intrusive physical examinations of the girls in an effort to substantiate the abuse charges were harmful to them." *Id.* at 717. On this basis, the trial court changed custody to the father. The mother appealed. *Id.*

On appeal, the *Keisling* Court recognized that an allegation of child sexual abuse by one parent against the other parent presents an especially difficult dilemma for a trial judge, whose first duty is to act in the best interest of the child:

Accusations of child sexual abuse by one parent against the other parent presents one of the most difficult issues faced by a trial court. Suspicion of such abuse must be taken seriously and were investigated thoroughly, for the consequences to the child of allowing any abuse to continue are grave. However, mistakenly concluding that a parent has abused his child, when in fact there has been no abuse, has serious consequences as well, including the almost-certain destruction of the parent-child relationship and disgrace to the accused parent. In addition, determining whether abuse has occurred can be enormously difficult; there is frequently a paucity of physical evidence, and the alleged child victim may be unable to accurately relate pertinent events. Finally, even investigating the accusation is delicate; the suggestibility of the alleged victim is almost invariably an issue, and heavy-handed or repetitive interrogation or physical examination can itself inflict long-lasting trauma on a child.

*Id.* at 722. After reviewing the record in detail, the ***Keisling*** Court observed: "The continued conduct by Mother . . . was clearly harmful to the children and their relationship with Father, and left the trial court with little choice but to designate Father as primary residential parent." *Id.* at 724. Therefore, we affirmed the trial court's decision. *Id.* at 731.

In the instant case, the Juvenile Court clearly felt that Mother's continued accusations and conduct toward Father were destructive and prevented the development of a normal father-daughter relationship. Based on the limited record before us, we cannot conclude that the Juvenile Court erred in its decision to designate Father as the primary residential parent.

Finally, Mother argues that the Juvenile Court erred in not including in its order a grant of residential parenting time to her. We agree.

In this case, the Juvenile Court order from which Mother appeals made factual findings that support its decision to designate Father as the child's primary residential parent. These factual findings, however, do not justify precluding Mother from having any visitation whatsoever.

In some cases, there are reasons why it may be necessary to preclude a parent from having contact with his or her child, for example, where the parent "might harm the child, the . . . parent[] [has] engaged in substance abuse, or [where] there is evidence that the visits upset the child." ***In re Adoption of A.M.H.***, No. W2004-01225-COA-R3-PT, 2005 WL 3132353, at *105 (Tenn. Ct. App. Nov. 23, 2005) (Kirby, J., dissenting) (citing ***Barker v. Barker***, No. W2003-01989-COA-R3-CV, 2004 WL 1908802, at *2 (Tenn. Ct. App. Aug. 23, 2004); ***Whitman v. Gifford***, No. 02A01-9206-CC-00172, 1993 WL 54603, at *5-6 (Tenn. Ct. App.

Mar. 3, 1993)). Nothing in the appellate record in this case indicates that the Juvenile Court was presented with evidence of behavior by Mother that would justify the elimination of *any* parenting time for Mother with the parties' child. Indeed, in the absence of a compelling reason to do so, an order which precludes contact between parent and child is to be studiously avoided, as the "inescapable effect" of such an order is the "untimely death" of the parent-child relationship. *Id.* at *106.

In this case, the Juvenile Court order from which Mother appeals does not forbid Mother from having any contact with the parties' child; after awarding Father "permanent and exclusive custody," it simply does not address parenting time for Mother, as the alternate residential parent. We interpret the Juvenile Court's use of the term "exclusive" in its grant of custody to Father as meaning that he had sole custody and the exclusive authority to make decisions for the child. The order does not state that Mother is prohibited from having any contact with the child, the child's school, medical providers, and the like. However, from the record, the parties apparently interpreted the Juvenile Court order as doing just that, precluding Mother from having any contact with the child.

At the time the Juvenile Court order was entered, in June 2003, it is unclear whether Mother was represented; she filed her request for rehearing and her notice of appeal *pro se*, and on September 3, 2003, her attorney filed a motion to withdraw.[9] Whatever the reason, Mother did not ask the Juvenile Court Judge to issue an order awarding her appropriate visitation; it is unclear whether Mother did not know she could do so or simply chose to file an appeal instead.

From that point forward, the difficulties created by the Juvenile Court's failure to award Mother visitation in its order were compounded by years of fruitless proceedings in the Circuit Court, only to later determine that the Circuit Court was without jurisdiction to hear Mother's appeal. From the record, it appears that Mother has had little or no contact with the parties' daughter, now ten years old, in the nearly *seven years* since the entry of the Juvenile Court order. This is unacceptable.

The Juvenile Court felt it necessary to designate Father as the primary residential parent, in order to protect the child's relationship with her father; it must now act expeditiously to protect the child's relationship with her mother. The cause must be remanded to the Juvenile

---

[9]The attorney at that time was Mitzi H. Spell. The motion to withdraw was filed in the Circuit Court and was granted by Circuit Court Judge Robilio.

Court for prompt proceedings to order and implement appropriate parenting time for Mother, as well as her parental rights as set forth in Tennessee Code Annotated § 36-6-101(a)(3).[10]

---

[10]Tennessee Code Annotated § 36-6-101 provides in pertinent part:

(3) Except when the court finds it not to be in the best interests of the affected child, each order pertaining to the custody or possession of a child . . . shall grant to each parent the rights listed in subdivisions (a)(3)(A)-(a)(3)(F) during periods when the child is not in that parent's possession or shall incorporate such rights by reference to a prior order. Other orders pertaining to custody or possession of a child may contain the rights listed in subdivisions (a)(3)(A)-(a)(3)(F). The referenced rights are as follows:

(A) The right to unimpeded telephone conversations with the child at least twice a week at reasonable times and for reasonable durations;

(B) The right to send mail to the child that the other parent shall not open or censor;

(C) The right to receive notice and relevant information as soon as practicable but within twenty-four (24) hours of any event of hospitalization, major illness or death of the child;

(D) The right to receive directly from the child's school records, names of teachers, class schedules, standardized test scores, and any other records customarily made available to parents, upon written request that includes a current mailing address and upon payment of reasonable costs of duplicating;

(E) Unless otherwise provided by law, the right to receive copies of the child's medical, health or other treatment records directly from the physician or health care provider who provided such treatment or health care upon written request that contains a current mailing address and upon payment of reasonable costs of duplication; provided, that no person who receives the mailing address of a parent as a result of this requirement shall provide such address to the other parent or a third person;

(F) The right to be free of unwarranted derogatory remarks made about such parent or such parent's family by the other parent to or in the presence of the child;

(G) The right to be given at least forty-eight (48) hours notice, whenever possible, of all extra-curricular activities, and the opportunity to participate or observe, including, but not limited to, the following:

(i) School activities;

(ii) Athletic activities;

(iii) Church activities; and

(continued...)

-12-

On remand, several factors must be considered. Supervision of Mother's visitation may be necessary if, for example, she resumes her hypervigilance and accusations regarding Father's alleged sexual abuse in the child's presence, for all of the reasons discussed above. However, the requirement of supervision is not automatic and should be avoided unless Mother's conduct makes it necessary:

> [S]upervision of a parent's visitation with his or her child is a significant intrusion on the parent-child relationship. It is sometimes necessary in order to protect the child yet permit continuation of the relationship. It is not to be undertaken lightly or without a reasonable basis.

*B.M.M.*, 2004 WL 1853418, at *18.

Conversely, just as Mother must respect the child's relationship with her father, Father will be obliged to put aside any negative feelings toward Mother and work in good faith to repair the child's relationship with her mother. Indeed, he must do so in order to remain the child's primary residential parent. Tennessee statutes mandate that, in making any custody determination, including an action to modify custody, the Juvenile Court must consider the willingness of Father and his wife to facilitate the child's relationship with Mother:

> (a) In . . . any . . . proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. The court shall consider all relevant factors, including the following, where applicable:

---

[10](...continued)

> > (iv) Other activities as to which parental participation or observation would be appropriate;
>
> (H) The right to receive from the other parent, in the event the other parent leaves the state with the minor child or children for more than two (2) days, an itinerary including telephone numbers for use in the event of an emergency; and
>
> (I) The right of access and participation in education, including the right of access to the minor child or children for lunch and other activities, on the same basis that is provided to all parents, provided the participation or access is reasonable and does not interfere with day-to-day operations or with the child's educational performance.

T.C.A. § 36-6-101(a)(3) (2005).

(10) . . . [T]he willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

T.C.A. § 36-6-106(a)(10) (2009 Supp.). Therefore, we must remand the case to the Juvenile Court for consideration and implementation of appropriate measures to reestablish the relationship of the parties' child with Mother,[11] including family counseling if necessary, in the discretion of the Juvenile Court.

## CONCLUSION

The decision of the Juvenile Court is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are taxed one-half to Plaintiff/Appellant Kimberly Byars and one-half to Defendant/Appellee Earl Young, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[11]This would include, if possible, Mother's sons, the half-siblings of the parties' daughter.