# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
October 17, 2013 Session

# IN THE MATTER OF K. A. P.

**Appeal from the Shelby County Circuit Court**
**No. CT-004803-11    Robert S. Weiss, Judge**

**No. W2012-00281-COA-R3-JV - Filed December 17, 2013**

This is a dependency and neglect appeal. The father of the child at issue filed a dependency and neglect petition in the juvenile court against the child's mother. The juvenile court held that the parties' son was dependent and neglected and designated the father as the primary residential parent. The mother appealed the juvenile court's decision to the circuit court. The circuit court conducted a *de novo* trial on the father's dependency and neglect petition. The circuit court noted the mother's past drug use but also found that the mother had consistently had clean drug tests since the juvenile court proceeding. Nevertheless, the circuit court held that the child was dependent and neglected, so it left the father as the primary residential parent. The mother now appeals. Based on our review of the record, we hold that the facts as found by the circuit court do not amount to clear and convincing evidence that the son was dependent and neglected in the mother's care. Therefore, we reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed**
**and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Linda K. Garner, Memphis, Tennessee for Plaintiff/Appellant J.W.

No brief filed on behalf of Defendant/Appellee L.P.

# OPINION

## FACTS AND PROCEEDINGS BELOW

In 2006, Appellant J.W. ("Mother") and Appellee L.P. ("Father") had one child together, son K.A.P. ("Son"), the child at issue in this appeal. Mother and Father were never married to one another. From the record, it appears that Son resided primarily with Mother for approximately the first five years of his life.

In February 2011, Father filed a petition in the Juvenile Court of Shelby County, Tennessee, asking the Juvenile Court to declare Son dependent and neglected in Mother's care. The petition included an allegation that Mother left Son with Father for seven weeks; Father asserted that Mother had no contact with Father or Son during this time and Father did not know her whereabouts. Father asked the Juvenile Court to designate him as the child's primary residential parent. The Juvenile Court appointed an attorney for Mother as well as a guardian ad litem for Son.

In April 2011, the Juvenile Court held an initial hearing on Father's dependency and neglect petition. At that hearing, Father alleged that Mother had used drugs. The Juvenile Court ordered Mother and Father to both undergo drug testing and continued its hearing on the merits of the petition. Mother's drug test was positive for marijuana. The record does not include the results of Father's drug test.

In September 2011, the Juvenile Court held its hearing on the merits of the dependency and neglect petition; the record does not include a transcript of the hearing. The result of Mother's drug test was submitted into evidence. At the conclusion of the hearing, the Juvenile Court entered an order in favor of Father. The Juvenile Court's order held that Mother was unfit "in that [Mother] uses marijuana in violation of the law" and had "failed to properly care for [Son's] needs leaving said child unclean." It noted that Mother's positive drug test was admitted into evidence. The Juvenile Court order stated that Father had a history of drug use but "appears to have kept clean for the past three years." Based on these findings of fact, the Juvenile Court sustained Father's dependency and neglect petition and placed Son in Father's custody. Inexplicably, the Juvenile Court order made no provision for parenting time for Mother.[1]

---

[1]The Juvenile Court order does not give a reason for failing to award Mother parenting time. In fact, it does not address Mother's parenting time at all. This is not the first time this Court has noted that a Juvenile Court order simply overlooked parenting time for the non-custodial parent. *See Byars v. Young*, 327 S.W.3d 42, 51 (Tenn. Ct. App. 2010). If the Juvenile Court changes the parenting arrangement for a child's parents, it

(continued...)

Mother filed an appeal of the Juvenile Court's ruling to the Circuit Court of Shelby County, Tennessee. The applicable Tennessee statute provides that an appeal from juvenile court to circuit court is *de novo,* but the juvenile court record goes to the circuit court for the appeal. Tenn. Code Ann. § 37-1-159 (2010).

In November 2011, the Circuit Court held an initial hearing on Mother's appeal. At this hearing, the Circuit Court awarded Mother parenting time on alternating weekends and ordered both parents to abstain from using any alcohol, drugs, or controlled substances in Son's presence. To allow time for Father to retain counsel, the Circuit Court continued the matter to December 2011.

On December 8, 2011, the Circuit Court held a trial on Mother's appeal. The appellate record does not contain a transcript or statement of the evidence for the trial, but the resulting Circuit Court order indicates that it heard testimony from both parties, two additional witnesses, and also considered multiple exhibits. After the trial, the Circuit Court entered an order that included the following findings of fact and conclusions of law:

A. Findings of Fact[]

1. Both parents love Child and want what is best for Child.
2. [Father] filed the original petition.
3. The original petition contained the allegation that [Mother] left Child with [Father], for seven weeks, during which time [Father] had no contact with [Mother].
4. The allegation of drug usage was raised at a hearing held in juvenile court on 8 April 2011, and sufficiently concerned juvenile court such that Magistrate Horne ordered both parents to submit to a drug test.
5. [Mother's] drug test, ordered by juvenile court, was positive for marijuana.
6. The results for [Father's] drug test, ordered by juvenile court, were not provided.
7. [Mother] admitted she used to smoke marijuana about one time per week while Child was in her legal custody.
8. [Mother] has had negative drug screens since the initial drug test ordered by juvenile court.

---

[1](...continued)
**must** affirmatively address the parenting time for both parents. If a parent is denied any parenting time whatsoever, this must be supported by factual findings and a legally sufficient reason. The Juvenile Court should enter no order that simply overlooks an issue so vitally important to the parent-child relationship.

9. The trial held in juvenile court on 23 September 2011, was a wake-up call to [Mother].

### B. Conclusions of Law

1. Child is a dependent and neglected child due to [Mother] having a drug test that was positive for marijuana and [Mother] admitting that she had used marijuana when Child was in her legal custody.

Based on these factual findings and legal conclusions, the Circuit Court designated Father as Son's primary residential parent and granted Mother unsupervised alternate parenting time, consisting of overnight visits every other weekend, one night each week, two weeks in June and July, and alternating holidays. In January 2012, Mother filed her notice of appeal to this Court.[2]

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Mother argues that the Circuit Court relied on the findings of the Juvenile Court and did not consider the matter *de novo*, as required under Tennessee Code Annotated § 37-1-159(c).

Dependency and neglect proceedings are governed by statute in Tennessee. The Juvenile Court has "exclusive original jurisdiction" to determine whether a child is dependent and neglected. Tenn. Code Ann. § 37-1-103(a)(1) (2011). The term "dependent and neglected child" is defined by statute. *See* Tenn. Code Ann. § 37-1-102(b)(12). An allegation that a child is dependent and neglected must be established by clear and convincing evidence. Tenn. Code Ann. § 37-1-129(c) (2012). For evidence to meet the clear and convincing standard, it must eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn.1992)). The evidence should produce a firm belief or conviction as to the truth of the allegations sought to be established. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007). Clear and

---

[2] In January 2013, approximately a year after Mother filed her notice of appeal, this Court issued a show cause order noting that Mother had failed to file a transcript or statement of the evidence, nor had she filed a notice with the trial court of no transcript or statement of the evidence, as required under Rule 24 of the Tennessee Rules of Appellate Procedure. In response, on February 5, 2013, Mother filed a pleading with this Court which stated that "there is no transcript in the above styled matter." After this Court instructed Mother to file her notice with the Circuit Court clerk and she did so, the technical record for this appeal was then filed. The record contains no indication that Mother attempted to file a statement of the evidence.

convincing evidence should demonstrate that the truth of the facts asserted is "highly probable" as opposed to merely "more probable" than not. *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005) (quoting *In re C.W.W.,* 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000)). *See generally In re Isaiah L.*, 340 S.W.3d 692, 705-706 (Tenn. Ct. App. 2010).

Under Tennessee Code Annotated § 37-1-159(a), an appeal from the juvenile court's decision on a dependency and neglect petition is to be heard by the circuit court. This statute provides that the appeal is *de novo*: "The juvenile court shall be a court of record; ... and any appeal from any final order or judgment in ... [a] dependent and neglect proceeding, filed under this chapter, may be made to the circuit court that shall hear the testimony of witnesses and try the case de novo." Tenn. Code Ann. § 37-1-159(a) (2010).

In light of the clear and convincing standard of proof, on appeal, this Court must "distinguish between the specific facts found by the trial court and the combined weight of those facts." *In re Tiffany B.*, 228 S.W.3d 148, 156 (Tenn. Ct. App. 2007). "If some of the trial court's factual findings are based on its determinations of the credibility of the witnesses, then this Court will afford great weight to those credibility determinations, and will not reverse such determinations absent clear evidence to the contrary." *Cornelius v. DCS*, 314 S.W.3d 902, 907 (Tenn. Ct. App. 2009) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.1995)). On appeal of the circuit court's decision to this Court, the appellate court reviews the circuit court's findings of fact *de novo* on the record, presuming the factual findings to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). The appellate court then determines whether the combined weight of the facts, as found by the circuit court or as supported by the preponderance of the evidence, clearly and convincingly establishes all of the required elements. *In re Tiffany B.*, 228 S.W.3d at 156; *In re S.M.*, 149 S.W.3d 632, 640 (Tenn. Ct. App. 2004). "Whether the ultimate issues of dependency and neglect . . . have been established by clear and convincing evidence are questions of law, which we review de novo with no presumption of correctness." *Cornelius*, 314 S.W.3d at 907; *see In re Isaiah L.*, 340 S.W.3d at 705-706.

"In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is 'highly probable' as opposed to merely 'more probable' than not." *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App.2005) (quoting *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000)). *See also In re Samaria S.,* 347 S.W.3d at 200. This heightened burden of proof serves to minimize the risk of an erroneous decision. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

**ANALYSIS**

On appeal, Mother argues that the Circuit Court abused its discretion by applying an incorrect legal standard to its determination on whether Son was dependent and neglected. Mother claims that she "ceased the use of marijuana" after the Juvenile Court proceeding and that, prior to the Circuit Court trial, she "voluntarily engaged in weekly drug tests, all of which were negative." Mother asserts that, in holding that Son was dependent and neglected, the Circuit Court erroneously relied solely on the Juvenile Court record and the positive drug test that was made an exhibit in the Juvenile Court proceeding. Despite this effort, Mother contends, the Circuit Court "gave hardly a thought to the continued divestment from this mother of the custody of her child, based solely upon a finding of marijuana in the juvenile court (a condition which had been remedied at the Circuit Court hearing)."

Mother acknowledges that Tennessee Code Annotated § 37-1-159(c) requires the juvenile court to "cause the entire record in the case, including the juvenile court's findings" to be "taken forthwith to the . . . circuit court whose duty it is . . . to set the case for an early hearing." Tenn. Code Ann. § 37-1-159(c). However, she emphasizes that the circuit court is to "hear the testimony of witnesses and try the case *de novo,*" which requires a "new trial on the entire case – that is, on both questions of fact and issues of law – conducted as if there had been no trial in the first instance." Tenn. Code Ann. § 37-1-159(a); *In re Isaiah L.*, 340 S.W.3d at 707 (citing *Kissick v. Kallaher*, No. W2004-02983-COA-R3-CV, 2006 WL 1350999, at *3 (Tenn. Ct. App. May 18, 2006)).

A biological parent's right to the care and the custody of his child is among the oldest of the judicially recognized liberty interests protected by the due process clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993); *In re Giorgianna H.*, 205 S.W.3d 508, 515 (Tenn. Ct. App. 2006). While this right is fundamental and superior to the claims of other persons, it is not absolute. *DCS v. C.H.K.*, 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). It continues without interruption only so long as the parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination. *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002); *In re M.J.B.*, 140 S.W.3d at 652-53.

Our legislature has established the situations in which the rights of a biological parent may be limited. *Tenn. Dep't of Children's Servs. v. Tikindra G. (In re Samaria S.)*, 347 S.W.3d 188, 201 (Tenn. Ct. App. 2011). These limitations include circumstances in which a child

is deemed to be dependent and neglected, as defined in Tennessee Code Annotated § 37-1-102(b)(12).[3] *Id.*

---

[3] A "dependent and neglected child" is defined as a child:

(A) Who is without a parent, guardian or legal custodian;

(B) Whose parent, guardian or person with whom the child lives, by reason of cruelty, mental incapacity, immorality or depravity is unfit to properly care for such child;

(C) Who is under unlawful or improper care, supervision, custody or restraint by any person, corporation, agency, association, institution, society or other organization or who is unlawfully kept out of school;

(D) Whose parent, guardian or custodian neglects or refuses to provide necessary medical, surgical, institutional or hospital care for such child;

(E) Who, because of lack of proper supervision, is found in any place the existence of which is in violation of law;

(F) Who is in such condition of want or suffering or is under such improper guardianship or control as to injure or endanger the morals or health of such child or others;

(G) Who is suffering from abuse or neglect;

(H) Who has been in the care and control of one (1) or more agency or person not related to such child by blood or marriage for a continuous period of six (6) months or longer in the absence of a power of attorney or court order, and such person or agency has not initiated judicial proceedings seeking either legal custody or adoption of the child;

(I) Who is or has been allowed, encouraged or permitted to engage in prostitution or obscene or pornographic photographing, filming, posing, or similar activity and whose parent, guardian or other custodian neglects or refuses to protect such child from further such activity; or

(J)(i) Who has willfully been left in the sole financial care and sole physical care of a related caregiver for not less than eighteen (18) consecutive months by the child's parent, parents or legal custodian to the related caregiver, and the child will suffer substantial harm if removed from the continuous care of such relative;

(ii) For the purposes of this subdivision (b)(12)(J):

    (a) A related caregiver shall include the child's biological, step or legal grandparent, great grandparent, sibling, aunt, uncle or any other person who is legally or biologically related to the child; and

(continued...)

"Parents have a duty to provide, and children have a corresponding right to be provided with, a safe environment, free from abuse and neglect." *In re H.L.F.*, 297 S.W.3d 223, 235 (Tenn. Ct. App. 2009); *In re R.C.P.*, No. M2003-01143-COA-R3-PT, 2004 WL 1567122, at *6, 2004 Tenn. App. LEXIS 449, at *21 (Tenn. Ct. App. July 13, 2004) (citations omitted). The primary purpose of dependency and neglect proceedings "is to provide for the care and protection of children whose parents are unable or unwilling to care for them." *DCS v. M.S.*, No. M2003-01670-COA-R3-CV, 2005 WL 549141, at *9 n. 11, 2005 Tenn. App. LEXIS 139, at *27 n. 11 (Tenn. Ct. App. Mar. 8, 2005). If a child is deemed dependent and neglected, the child is often removed from the custody of the parent who is responsible for the dependency or neglect. *In re Gaven R.*, No. M2005-01868-COA-R3-CV, 2007 WL 2198288, at *7; 2007 Tenn. App. LEXIS 464, at *21-22 (Tenn. Ct. App. July 23, 2007).

In this appeal, Mother argues that the Circuit Court improperly relied on the Juvenile Court's record in this cause. This Court has previously discussed the extent to which a circuit court may consider the juvenile court record in an appeal from a juvenile court finding of dependency and neglect:

> As we have noted, Tennessee Code Annotated § 37-1-159(c) requires the juvenile court to "cause the entire record in the case, including the juvenile court's findings" to be "taken forthwith to the ... circuit court whose duty it is ... to set the case for an early hearing." T.C.A. § 37-1-159(c). The circuit court is to "hear the testimony of witnesses and try the case de novo." T.C.A. § 37-1-159(a). On appeal, the record of the juvenile court must be provided to the circuit court. T.C.A. § 37-1-159(c). However, the circuit court is not limited to that record. "On the contrary, the circuit court in a dependency and neglect proceeding may not rely solely on the record made before the juvenile court, but under Tenn. Code Ann. § 37-1-159(c) must try the case de novo by hearing witnesses again and by rendering an independent decision based on the evidence received in the circuit court proceeding." *Cornelius*, 314 S.W.3d at 906 (citing *DCS v. T.M.B.K.*, 197 S.W.3d 282, 289 (Tenn. Ct. App. 2006)). A de novo trial is "[a] new trial on the entire case—that is, on both questions of

---

[3](...continued)

> (b) A child willfully left with a related caregiver as defined in subdivision (b)(12)(J)(ii)(a) because of the parent's military service shall not be subject to action pursuant to § 37-1-183;

Tenn. Code Ann. § 37-1-102(b)(12) (2013).

fact and issues of law—conducted as if there had been no trial in the first instance." ***Id.*** (citing ***Kissick v. Kallaher***, No. W2004-02983-COA-R3-CV, 2006 WL 1350999, at *3 (Tenn. Ct. App. May 18, 2006)).

***In re Isaiah L.,*** 340 S.W.3d at 707. In ***In re Isaiah L.***, in considering a dependency and neglect appeal from juvenile court, the circuit court entered the juvenile court's order into evidence as a trial exhibit. ***Id.*** at 707-08. This Court held that simply entering into evidence the juvenile court's order was not an error, in that the statute contemplates that the circuit court will have before it the juvenile court record. The circuit court's primary responsibility was to make an independent decision based on the evidence presented in the circuit court proceeding, and in that case we noted: "[T]he record shows clearly that the Circuit Court gave careful consideration to all of the testimony presented in its *de novo* trial on the DCS petition." ***Id.*** at 708. Thus, Tennessee Code Annotated § 37-1-159 directs the circuit court to conduct its own *de novo* trial, but also permits it to consider the juvenile court record. Tenn. Code Ann. § 37-1-159(a); ***In re Isaiah L.,*** 340 S.W.3d at 707; ***In re Alysia M.S.***, No. M2011-02008-COA-R3-JV, 2013 WL 1501710, at *2-3; 2013 Tenn. App. LEXIS 264, at *6-11 (Tenn. Ct. App. Apr. 11, 2013) (quoting the circuit court's review of the juvenile court's record). We consider the factual findings and legal conclusions of the Circuit Court below against that backdrop.

We must also consider the Circuit Court's order in light of the fact that the appellate record in this case includes neither a transcript nor a statement of the evidence for the proceedings in the Circuit Court. The "absence of either a transcript or a statement of the evidence significantly ties the hands of the appellate court." ***Chandler v. Chandler***, No. W2010-01503-COA-R3-CV, 2012 WL 2393698, at *6; 2012 Tenn. App. LEXIS 418, at *20 (Tenn. Ct. App. June 26, 2012); ***Trusty v. Robinson***, No. M2000-01590-COA-R3-CV, 2001 WL 96043, at *1 (Tenn. Ct. App. Feb. 6, 2001) (citing Tenn. R. App. P. 24(b); ***State v. Ballard***, 855 S.W.2d 557, 560-61 (Tenn. 1993); ***Nickas v. Capadalis***, 954 S.W.2d 735, 742 (Tenn. Ct. App. 1997)). Where the appellant fails to prepare an adequate appellate record, we are unable to determine where the preponderance of the evidence lies as to the trial court's findings of fact and have no choice but to assume that the record, had it been preserved and provided to us, would have contained sufficient evidence to support those factual findings. ***Ragland v. Oakland Deposit Bank***, No. W2011-02303-COA-R3-CV, 2012 WL 2849518, at *5 (Tenn. Ct. App. July 12, 2012); ***McDonald v. Onoh***, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989); ***Gotten v. Gotten***, 748 S.W.2d 430, 432 (Tenn. Ct. App. 1987). Therefore, we take the Circuit Court's findings of fact in this case at face value and soldier on. ***See Ragland***, 2012 WL 2849518, at *6 (citing ***Gross v. McKenna***, No. E2005-02488-COA-R3-CV, 2007 WL 3171155, at *2-3 (Tenn. Ct. App. Oct. 30, 2007)) ("Because of the absence of a proper record, we are limited to addressing those issues which raise pure questions of law, as well as any issues challenging the trial judge's application of the law to the facts as stated by the judge

himself in his . . . opinions."); ***Baker v. Hancock County Election Commission***, No. 15, 1987 WL 7717, at *1 (Tenn. Ct. App. March 12, 1987) ("No transcript or statement of the evidence was filed, but we will accept as accurate the findings of fact in the Trial Court's memorandum opinion . . . .").

The Circuit Court's order first finds that both parties love Son and want what is best for him. The Circuit Court's order then notes that Father's original Juvenile Court petition alleged that Mother left Son with Father for seven weeks, during which time Father had no contact with Mother. We view this as the Circuit Court's recitation of an allegation made in the Juvenile Court proceedings, not a factual finding by the Circuit Court. The Circuit Court made no factual finding as to whether this incident in fact occurred.

The Circuit Court order next notes that allegations of drug use at the Juvenile Court's April 2011 hearing prompted the Juvenile Court to order both parties to take a drug test. Again, this is merely a recitation of allegations made in the Juvenile Court proceedings, not a factual finding.

The Circuit Court order then states that Mother's drug test, as ordered by the Juvenile Court, "was positive for marijuana." As we have no transcript or statement of the evidence, we presume that this finding of fact is supported by the preponderance of the evidence submitted in the Circuit Court proceedings.

The Circuit Court order next states that Mother "admitted she used to smoke marijuana about one time per week while Child was in her legal custody." As we have no transcript or statement of the evidence, we presume that this statement in the Circuit Court's order is supported by the preponderance of the evidence submitted in the Circuit Court proceedings. However, the finding contains no temporal reference, so we do not know when Mother smoked marijuana once per week or for how long; we know only that it was while Son was "in her legal custody." Moreover, we do not know from the Circuit Court's factual finding whether Mother's marijuana usage occurred when Son was physically present with Mother; we know only that it took place while the child was in her "legal custody."

The Circuit Court order next finds that Mother "has had negative drug screens since the initial drug test ordered by juvenile court." As we have no transcript or statement of the evidence, we presume that this factual finding is supported by the preponderance of the evidence submitted in the Circuit Court proceedings. The Circuit Court then describes the September 2011 Juvenile Court trial as "a wake-up call" for Mother. We infer from these two statements in the Circuit Court's order that the Circuit Court concluded that Mother did not engage in illegal drug use after the September 2011 Juvenile Court trial in which the Juvenile Court

transferred custody of Son to Father. This is the sum total of the Circuit Court's findings of fact.

The Circuit Court order then makes the legal conclusion that Son is dependent and neglected "due to [Mother] having a drug test that was positive for marijuana and [Mother] admitting that she had used marijuana when [Son] was in her legal custody." The Circuit Court made no reference to the definition of a "dependent and neglected child" in Tennessee Code Annotated § 37-1-102(b)(12). For example, we do not know whether the Circuit Court deemed Mother to be an "unfit" parent "by reason of . . . immorality," or if it found that Son was "under such improper guardianship or control as to injure or endanger [his] morals or health . . ." Tenn. Code Ann. § 37-1-102(b)(12)(B) and (F). The statute does not permit a court to hold that any bad behavior whatsoever by a parent must inevitably lead to a finding that the child is dependent and neglected. The term "dependent and neglected child" is a defined term under the statute, so the Circuit Court below was obliged to ascertain – and state – the subsection or subsections of the statute that it deemed applicable to the facts as found by the Circuit Court. This was not done.

Instead of remanding the case to the Circuit Court for appropriate conclusions of law based on the statutory definition of "dependent and neglected child," we deem it prudent to look at the facts as found by the Circuit Court and determine whether they amount to clear and convincing evidence that Son is a dependent and neglected child under any subsection of Tennessee Code Annotated § 37-1-102(b)(12). In this case, the Circuit Court found only that, at some point prior to the Juvenile Court trial and for an undetermined period of time, Mother engaged in once-per-week marijuana use, and that Mother's drug test in the September 2011 Juvenile Court proceeding was positive for marijuana. The Circuit Court also indicated that Mother responded favorably to the Juvenile Court's "wake-up call" and made the factual finding there was no evidence of illegal drug use since the Juvenile Court trial.

The Circuit Court obviously took seriously Mother's use of illegal drugs, as does this Court. However, we are mindful of the high standard of proof in dependency and neglect proceedings. On appeal, we are charged with determining whether the combined weight of the facts as found by the Circuit Court clearly and convincingly establishes that Son is dependent and neglected within the meaning of Tennessee Code Annotated § 37-1-102(b)(12). *In re Tiffany* B., 228 S.W.3d at 156; *In re S.M.*, 149 S.W.3d at 640. We must conclude that the fact that Mother at some point in the past engaged in once-per-week marijuana use and had a single positive drug test in September 2011, without more, does not amount to clear and convincing evidence that Mother is "unfit to properly care for [Son]" or

-11-

that Son is dependent and neglected under any subsection in Section 37-1-102(b)(12).[4] Tenn. Code Ann. § 37-1-102(b)(12)(B). ***See In re Alysia M.S.***, 2013 WL 1501710, at *8; 2013 Tenn. App. LEXIS 264, at *25-26 (mother smoked marijuana daily at the time of the juvenile proceedings, but the circuit court found in its *de novo* appeal that the evidence was insufficient to find that the daughter was dependent and neglected because at the time of the circuit court proceedings, the mother had passed random drug screens and consistently attended recovery meetings; affirmed on appeal).

Under these circumstances, we must reverse the Circuit Court's order holding that Son is a dependent and neglected child. We remand the case for further proceedings in light of our holding.

All other issues raised on appeal are pretermitted by this decision.

### CONCLUSION

The decision of the Circuit Court is reversed and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are assessed against Defendant/Appellee L.P.

$$\text{_____}$$

HOLLY M. KIRBY, JUDGE

---

[4]In addition to Mother's positive drug test, the Juvenile Court found that Mother had "failed to properly care for [Son's] needs leaving [Son] unclean." The Circuit Court made no finding in this regard, nor did the Circuit Court make a finding on Father's allegation that Mother left the child with him for several weeks with no contact. Under these circumstances, we may not take these allegations into account in determining whether there is clear and convincing evidence that Son is dependent and neglected.